J2FOGG, Judge.
The defendant, Hillner Thomas, was charged by bill of information with purse snatching, a violation of LSA-R.S. 14:65.1. The defendant pled not guilty and was tried by a jury. The jury found the defendant guilty as charged, and the trial court sentenced the defendant to imprisonment at hard labor for ten years and credited him with time served. The defendant has appealed, urging as his only assignment of error that the trial court erred when it denied the defendant’s motion for additional discovery and Brady material.
The bill of information charged the defendant with snatching a purse from a customer of B.L.G. Tires on December 4, 1992, in East Baton Rouge Parish. The state presented the following testimony at trial. Gerald Jones, an employee of B.L.G. Tires, testified that he was putting a tire on the victim’s car when he saw a man he identified as the defendant dragging the victim on the ground while attempting to take her purse. Jones stated that the victim released her purse, and the defendant ran. Jones unsuccessfully tried to catch the defendant. Jones was positive that the defendant was the person who took the victim’s purse, and stated that there was no doubt in his mind. According to Jones, the defendant had been sitting in the tire shop for about ten to fifteen minutes prior to the incident. Jones was ten to fifteen feet away from the defendant, and the lighting was good in the tire shop.
Barry Green, the owner of B.L.G. Tires, testified that he knew the defendant because they had gone to school together and they had always lived in the same neighborhood. Green testified that the victim paid him and was waiting for her car. The defendant, who was at the tire shop with another customer, was standing about three feet from the victim. Green went to put the-victim’s money in the cash register inside his building; while inside, he heard the victim scream, “Just let go of my poeketbook.” He ran outside and saw the defendant dragging the victim by her purse. Green testified that the customer, whom the ^defendant had accompanied, shot a gun in the air to try to get the defendant to stop. Then, according to Green, the purse strap broke or the victim let go, and the defendant ran away with the purse. Green chased the defendant, but could not catch him. Green called the police and then went to the defendant’s house to tell the defendant’s mother what had happened. According to Green, the victim accompanied him and told the defendant’s mother if she could get her purse and money back, she would not want to press charges. Green returned to the tire shop and gave police the defendant’s name. Green testified that he was positive the defendant was the man who stole the purse.
Officer Larry Lewis, a Baton Rouge City Police officer, took the victim’s complaint and later arrested the defendant. Officer Lewis testified that Green identified the defendant at the station.
The victim testified that the work on her car was nearly complete and she paid Green. Then, according to the victim, the defendant stood in front of her and grabbed her purse which had been on her lap. The purse contained a wallet, about $280 in cash, credit cards, a checkbook, and keys, among other things. She protested and continued to hold onto the purse while struggling with the *1310 defendant. By holding onto the purse, the defendant dragged the victim out of the seat she had been occupying and began dragging her along the ground at which time she began yelling for help. The defendant succeeded in snatching her purse away from her and ran; Jones came to assist her. Green and the other customer, whom the defendant had accompanied, came out of Green’s office, and Green chased the defendant. The other customer shot a gun in the air in the defendant’s direction. However, the defendant continued to run, with Green chasing him. The victim testified that she suffered a fractured thumb and scraped knees due to the incident. The victim identified the defendant as the man who took her purse and stated that she was positive of her identification.
On cross-examination, the victim testified that, while waiting for the police, she accompanied Green to the defendant’s Rmother’s house and informed her of what had happened. The victim stated that she told the defendant’s mother she was just interested in having her purse returned, but she could not recall telling the defendant’s mother that if the defendant returned her purse, she would drop any charges. The victim went to the police station afterwards to report the crime. The victim denied telling the police that the purse was stolen from her car.
In its case, the defense recalled Officer Lewis and the victim. Officer Lewis testified that the victim told him that the defendant snatched her purse from her while she was inside her car following completion of the tire repair work. According to Officer Lewis, the victim told him she was pulled through her car. The victim testified that she was not in her car when the defendant grabbed her purse.
In the defendant’s sole assignment of error, he contends the trial court erred denying his request for an up-to-date rap sheet on one of the state’s witnesses, Jones.[1] The defendant contends that, upon requesting evidence of criminal convictions of a state witness, the state was obligated to provide not only what it might have in its file, but also what is available by searching records and Louisiana State Police computers. To support his contention, the defendant relies on State v. Laird, 551 So.2d 1310 (La.1989), State v. Landry, 531 So.2d 254 (La.1988), State v. Williams, 448 So.2d 659 (La.1984), and State v. Selvage, 93-1435 (La.App. 1 Cir. 10/7/94); 644 So.2d 745, writ denied, 94-2744 (La.3/10/95); 650 So.2d 1174.[2] The defendantjesought an up-to-date rap sheet on Jones so that he could ascertain whether arrests resulted in convictions in East Baton Rouge Parish and whether Jones had been convicted in another state since the time of his last arrest in East Baton Rouge Parish. The defendant asserts that the bail bond file copy of Jones’ rap sheet which he was provided only shows the last arrest in East Baton Rouge Parish. The defendant sought the current rap sheet for cross-examination purposes because he alleges the witness’ testimony regarding his convictions was evasive. The defendant asserts that he did not have the necessary tools for possible impeachment of the witness.
Prior to trial, the defense counsel filed a “Motion for Additional Discovery and/or Brady Material.” In the motion, the defendant alleged that he had reason to believe that at least one state witness had a criminal record, based on work product. The defendant alleged that his constitutional right to confront and cross-examine the witnesses against him would be seriously impaired if he were denied access to information about the wit *1311 nesses’ criminal records. The defendant requested accurate current criminal records possessed by or available to the state regarding all persons the state intended to call as witnesses.
At the beginning of the trial, the court considered the defendant’s motion and directed a person to go to the bail bond office and pull the bail bond file on the state’s witnesses. The court stated that it would then look at the file and give the defendant any rap sheets in it.[3] The defense counsel stated that this was insufficient and that she had the right to have the district attorney’s office “run” a current rap sheet. The court denied the request and the defense counsel noted her objection.
When the defense counsel cross-examined Jones, she asked him if he had ever been convicted of a crime. He answered that he had never been convicted but that he had been in trouble. The defense counsel then asked Jones if he had ever pled guilty to anything, and he replied, “I never had to.” The defense counsel |6then asked, “Not a simple battery?”, to which Jones replied, “Simple battery? I’ve had some simple battery charges on me.” Jones then admitted that he pled guilty to “that.” Jones was then asked if that was the only charge to which he had pled guilty, and he answered that he had pled guilty to a DWI. He then asked the defense counsel, “[Yjou’re trying to get me to bring up every charge I had?”, to which defense counsel replied “just convictions.” Jones then answered that he was convicted of “child support,” a DWI and two simple batteries.
The state asked Jones if he had pled guilty to some misdemeanors, to which he replied that he had, but that he had not pled guilty to any felonies.
In State v. Laird, 551 So.2d 1310 (La.1989), the supreme court stated: “The state should make available rap sheets on all state witnesses in it [sic] possession or available to it on its computer system.” The court referred to State v. Harvey, 358 So.2d 1224 (La.1978), and State v. Lee, 531 So.2d 254 (La.1988). Laird, 551 So.2d at 1310. According to Harvey, a specific request for prior convictions must be made and the state must respond to defendant’s request-by stating whether the state has knowledge or possession of the requested records. State v. Harvey, 358 So.2d at 1232. If the state has knowledge or possession of the records, it must furnish them to the defense or submit them to the court for determination as to whether the defense is entitled to them. State v. Harvey, 358 So.2d at 1232.
In this case, the defendant’s request for information from the prosecutor, insofar as it called for the current rap sheets of the state’s witnesses, constituted a specific and relevant request.[4] Therefore, we conclude that the trial judge erred in |7not requiring the prosecutor to respond to the specific request of the defendant by stating whether the state had knowledge or possession of current rap sheets, or whether the current rap sheets were available to the state, and, if so, by not requiring the prosecutor to furnish them to the defendant or submit them to the court for a determination as to whether the defendant was entitled to this material. See State v. Laird, 551 So.2d at 1310; See also State v. Harvey, 358 So.2d at 1232.
This case will be remanded to the trial court for it to determine if there was a suppression of subject matter requested for which there was a substantial basis for claiming that materiality existed under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), U.S. v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), and Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 *1312 L.Ed.2d 490 (1995). State v. Marshall, 94-0461 (La.9/5/95); 660 So.2d 819; State v. Harvey, 358 So.2d at 1233. In determining whether the evidence is material, the court must determine whether the material suppressed by the state would, upon its evaluation in the context of the entire record, create a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383; State v. Marshall, 94-0461 at pp. 16-17, 660 So.2d at 826; State v. Huls, 95-0541 at p. 12 (La.App. 1 Cir. 5/29/96); 676 So.2d 160, 169-170, writ denied, 96-1734 (La. 1/6/97); 685 So.2d 126. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383; State v. Marshall, 94 0461 at p. 16, 660 So.2d at 826; State v. Huls, 95-0541 at p. 12, 676 So.2d at 169. Should the trial court find that the net effect of the state-suppressed evidence favoring the defendant raises a reasonable probability that its disclosure would have produced a different result at trial, the conviction cannot stand and a new trial will be required. See Kyles, 514 U.S. at 440-54, 115 S.Ct. at 1569-1576; State v. Marshall, 94-0461 at p. 16, 660 So.2d at 826. See also State v. Huls, 95-0541 at p. 12, 676 So.2d at 169-170. If |8the trial court finds there was no suppression of material which should have been disclosed, or if it finds, after an evaluation as described, there is no reasonable probability that its disclosure would have produced a diffei’ent result at trial, the conviction and sentence will be affirmed. State v. Haney, 358 So.2d at 1233. The proceedings and determinations of the trial court will be subject to review by this court on appeal.
For the reasons assigned, the defendant’s conviction and sentence are conditionally affirmed but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial herein and reserving the defendant’s rights to appeal from any adverse ruling by the court.
AFFIRMED CONDITIONALLY AND REMANDED.

. When asked by the state on direct examination. Green testified that he was convicted when he was seventeen, but that he had no other convictions. The defense counsel did not ask Green or the victim any questions regarding convictions on cross-examination.

. While the Laird case involves the state’s obligation to make available rap sheets on state witnesses it possesses or which are available to it, the Landry case involves defendant's right to question a state’s witness about his arrest which may be independently relevant to show bias (State v. Landry, 531 So.2d at 254). The Williams case involves the state’s duty to disclose information which it does not possess regarding defendant’s prior convictions, and the Selvage case concerns the state's duty to search its own records to comply with a discovery request regarding defendant’s prior convictions (State v. Williams, 448 So.2d at 664; State v. Selvage, 93-1435 at p. 6, 644 So.2d at 750).

. The record does not reflect what, if anything, the trial court gave the defendant.

. Unlike the case of State v. Powell, 94-1390 (La.App. 1 Cir. 10/6/95); 671 So.2d 493, writ denied, 95-2710 (La.2/9/96); 667 So.2d 529, the defendant in this case preserved the right to appeal the trial court's ruling on his discovery request. Furthermore, in this case, there was some indication that the state was in possession of the witnesses’ rap sheets or that they were available to it because the trial court ordered that the bail bond records be searched and questioning of two of the state’s witnesses revealed prior criminal charges.